# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL INDICTMENT** |
| v. | **NO. 1:13-CR-40-JEC** |
| **ANTONIO KILPATRICK HEARD,** | |
| **Defendant.** | |

## FINAL REPORT AND RECOMMENDATION

Defendant Antonio Kilpatrick Heard ("Defendant") is charged with possession of a firearm by a convicted felon and possession of stolen firearms, in violation of 18 U.S.C. §§ 922(g), 924(e), 922(j), and 924(a). Pending before this court is Defendant's Motion to Suppress In-Court Identifications, as amended [Docs. 24 and 27]. An evidentiary hearing on this motion was held before me on August 5, 2013. All transcript references ("Tr.__") are to the transcript of that hearing. For the reasons discussed below, I recommend that Defendant's motions to suppress [Docs. 24 and 27] be **DENIED**.

## I.     FACTS

On December 29, 2012, approximately 49 firearms were stolen from the Big Gun Armory, a federal firearms licensee in Dacula, Georgia. (Tr. 7). On or about January 4, 2013, law enforcement officers obtained information from two individuals ("sources

AO 72A
(Rev.8/8
2)

of information" or "SOIs") that a man named "Tony" had about thirteen firearms that matched the description of the firearms that were stolen from the Big Gun Armory. According to the SOIs, Tony was offering to sell these firearms. (Tr. 9-10). One of the SOIs gave Tony's telephone number to an agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). An ATF investigator learned that the telephone number was registered to someone associated with Defendant, and the investigator obtained a booking photograph of Defendant from the Gwinnett County Sheriff's Department. ATF agents showed the photograph to one of the SOIs. The SOI identified the photograph as the person that he knew as Tony. (Tr. 14-15).[1]

ATF Agent Dan Arrugueta, acting in an undercover capacity, called Tony and posed as a potential purchaser of the firearms. Agent Arrugueta arranged to meet Tony at a specific location for the purpose of purchasing six firearms from him. (Tr. 16). Prior to the meeting between Agent Arrugueta and Tony, another agent may have shown Agent Arrugueta the booking photograph of Defendant, and one of the SOIs provided a brief physical description of Tony. (Tr. 28, 34-35). Before the meeting with

---

[1] The Government has stated that it does not intend to introduce the source's identification of Defendant as evidence.

2

Tony, Agent Arrugueta knew that he would be called upon later to identify the person from whom he was purchasing firearms. (Tr. 36-37).

The meeting between Tony and Agent Arrugueta took place on January 4, 2013 at approximately 10:30 or 11:00 p.m. in Tony's pickup truck at a McDonald's parking lot. The two men were seated next to each other in the front seat of the truck. (Tr. 39). Although it was dark outside and the lighting was not very good, Agent Arrugueta was able to see Tony and his view was unimpaired. (Tr. 40). During the meeting, Agent Arrugueta paid a high degree of attention to Tony. (Tr. 36-37). Agent Arrugueta was specifically trained to be able to make later identifications of potential defendants with whom he interacted in an undercover capacity. (Tr. 37).

The firearms were in the back seat of Tony's truck. Tony retrieved each firearm individually from the back seat and handed each one separately to Agent Arrugueta. Agent Arrugueta examined each firearm and ascertained whether it was loaded. He field-tested the rifle. (Tr. 41, 43-44). Then Agent Arrugueta paid for the guns. The two men were together in Tony's truck for approximately five minutes. Agent Arrugueta left the truck on two occasions: once to retrieve a blanket to conceal the firearms, and a second time to place the purchased firearms inside his vehicle.

3

After Agent Arrugueta placed the guns into his vehicle, Agent Arrugueta returned to Tony's truck, and they talked about future purchases. (Tr. 41-43).

Within ten to fifteen minutes after the undercover transaction, an agent showed Agent Arrugueta the booking photograph of Defendant and asked him if the person in the photograph was the person from whom Agent Arrugueta had just purchased the firearms. Agent Arrugueta was positive that it was the same person. (Tr. 21-22, 39).

## II.   DISCUSSION

Defendant moves to suppress Agent Arrugueta's in-court and out-of-court identifications of Defendant as the person from whom he purchased firearms.

An eyewitness identification may constitute a due process violation if the identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302 (1967), *overruled on other grounds by* Griffith v. Kentucky, 479 U.S. 314 (1987); see also Manson v. Brathwaite, 432 U.S. 98, 104 (1977); Neil v. Biggers, 409 U.S. 188, 196 (1972). The fact that the identification procedure used may have been suggestive, alone, does not violate due process. See Biggers, 409 U.S. at 198-99. Rather, the "central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199.

4

The Supreme Court has identified several factors to consider in evaluating "the likelihood of misidentification," including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 199-200.

Here, the Government concedes that the presentation of a single photograph to Agent Arrugueta was a suggestive identification procedure. [Doc. 47 at 6]. However, the Government argues -- and I find -- that the identification was nonetheless reliable under the totality of the circumstances. Agent Arrugueta was in close proximity to Tony for several minutes, and the agent's attention was focused on Tony because the agent knew that he would be called upon to identify Tony in the future. Thus, the first two factors of the Biggers analysis weigh against suppression of the identification. See United States v. Celis-Sosa, No. 4:10-CR-43-RLV-WEJ, 2011 WL 2149345, at *4 (N.D. Ga. May 11, 2011).

The third factor is not relevant because Agent Arrugueta did not provide (and could not have provided) a prior description of the person with whom he was to meet.

5

The fourth Biggers factor is satisfied because after Agent Arrugueta purchased the firearms from Tony, Agent Arrugueta was shown the booking photograph of Defendant and indicated, without hesitation, that he was certain that Tony was the person depicted in the booking photograph. (Tr. 22). See United States v. Moody, 564 F.3d 754, 763 (5th Cir. 2009) (holding that the fourth factor is met when the witness never wavered in his identification). Finally, the fifth factor supports the reliability finding and weighs against suppression because Agent Arrugueta made his identification within fifteen minutes of the undercover transaction.

Short of "a very substantial likelihood of irreparable misidentification," any evidence suggesting an incorrect identification is for the jury to weigh. Brathwaite, 432 U.S. at 114, 116. The totality of circumstances establishes that the identification of Defendant by Agent Arrugueta was and will be sufficiently reliable for presentation to a jury even though the identification procedure was initially suggestive.

### III.  CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendant's Motion to Suppress In-Court Identifications [Docs. 24 and 27] be **DENIED**.

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

It is so **ORDERED** and **RECOMMENDED**, this 11th day of October, 2013.

_/s/ Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)